Dan Cohen on behalf of the Plaintiff Appellant Helping Hand. We have requested five minutes for rebuttal in a perfect world. The white light will turn on when that is about to happen, so it's up to you. This is an appeal of summary judgment entered by the District Court in a putative class action brought under the Telephone Consumer Protection Act or the Junk Fax Act. It's predicated on an allegation that mass advertising faxes that were unsolicited by the recipients were sent on behalf of the defendant, Darden. The trial court granted summary judgment holding that there was no evidence to make a submissible case that the faxes were in fact sent on behalf of Darden. We claim two overarching allegations of error on appeal. The first is error in refusing to allow the plaintiff to depose two critical fact witnesses with personal participation in and personal knowledge of communications between Darden and the advertising entity that actually commissioned the products. Maybe I misunderstood the District Court's order, Mr. Cohen, because I thought it was pretty clear that you could take that deposition, those depositions, once you straightened out the status of the other defendants. The District Court's reasoning mutated over time or at least seemed to evolve over time. At first it was that... I thought that he wanted to make sure that there was not an argument to have these witnesses deposed twice. Piecemeal discovery is what he sought to avoid. Well, that's right. So he wants everybody who's going to be in to be in, file appearances so that all the right people are sitting in the room for the deposition. So why was that an abuse of discretion? Well, up until the time of summary judgment, perhaps it was not. But when, for a year and a half, the District Court precludes the plaintiff from proceeding, we can't force these defendants to enter an appearance and... Why didn't you move for default? Judge, that's an option. I don't believe the plaintiff can be put in the position of being forced to make that strategic decision. Why not? I mean, this seems like much ado about nothing. The District Court has considerable discretion over the sequencing and the management of phases in a lawsuit where you've got multiple moving parts. This isn't especially complicated, but it's perfectly reasonable, it would seem to me, to say, let's avoid piecemeal discovery. Let's make sure everybody's in the room before you take these depositions. The judge tells you what you can do, and you refuse to do it. What's unfair about leaving you with the consequences of that choice? Because, as we've articulated, the consequences of defaulting a defendant in imputative class action, in our experience, as a very experienced TCPA class action firm, is that it terminates the chance of getting class certification. Then why didn't you try to get the class certified first? In order to get the class certified, we were going to need to be able to establish a basis on behalf of liability of Darden. You don't need merits proof to get a class certified. In the TCPA context, the general class action case law says the certification determination is often wrapped up in certain merits issues, and the court is permitted to look at the merits to the extent necessary. It's permitted to, but also, for a long time, the rule said you had to do class certification first, and that was often honored in the breach, and that's why the rule changed. But I go back to failing to see, but I'm certainly willing to be convinced. In an ordinary A versus B lawsuit, you'd be entitled to take these depositions, but I don't see the abuse of discretion in the management of the scheduling and sequencing here. Besides, there's a difference between entering a default and entering a default judgment. Usually, even just entering a default snaps people right to attention, because all of a sudden they are facing very serious consequences. Unfortunately, in a TCPA individual action, the most consequences they're facing is a minimum of $500 statutory liability and a maximum of $1,500. Right, and there were several hundred thousand dollars in the hole, if I remember correctly, right?  The other defendants? In the hole. Judgment proof. We never got that far with them. Okay. Does your argument for the depositions of Momo and Sanchez ultimately rest on the notion that one or both of them authorized the use of the logo for marketing by fax, but that Jones didn't remember it or didn't truthfully testify about it, and that they didn't record that authority in any email? No, Your Honor. I'm trying to place my answer in the context of your question. I think our position was that this entire interaction, but for certain bilateral emails and then certain internal emails, was predicated on multiple oral communications. Jones presumably was involved in all of them, but on the Darden side, there was a division of participation and involvement between Bott, Momot, and Sanchez, with, in fact, Bott the only employee we were allowed to depose. Right, but Judge Rovner has said, What would you have gained, basically, by getting the testimony of these other two? And she suggested maybe would you have gained further insight into the question whether the use of the logo was authorized. A very fair question. We would have definitely gained further insight into that because Bott denied it. They're not in a position to authorize, though. They're down the totem pole. Who's down the totem pole? Right. Jones never testified. Momot and the two people you wanted to? Sanchez and Momot. Right, Sanchez. There's no contention or position that I've seen expressed in this case, nor that would be supported in the case law, that just because Sanchez and Momot may have been lower in the chain of authority than Bott, that they could not have expressed an authorization to a third party who then acted on that authorization for which Darden could then be held liable. That would be a question of apparent agency, apparent authority. Did you ever talk to Ms. Momot or communicate with her? No, Your Honor. Try to? We did not under the circumstances because there is individual civil liability for corporate officers under the TCPA who directly participate or are personally authorized, so we did not feel that would be appropriate in this circumstance. She was a former employee. Look, it seems to me that, oh, sorry. She was a former employee. You didn't think you could even contact her? When her liability would not only potentially expose her to risk but also could have been the linchpin to place the liability on Darden, we did not feel that was an appropriate move. Judge Rovner, did you have one final question? Well, Jones is a person to whom they were, you know, alleged to have given authority, and he made it abundantly clear that Bott was the person who was a party to the final marketing conversations. So, you know, there's so much speculation here on your part. Your Honor, if I may, on the issue of whether it's speculation, I would draw the Court's attention to the Radice decision, which Judge Wood authored, and the standard is whether deposing the witness with known and demonstrated personal involvement in the relevant nucleus of operative facts would, quote-unquote, aid in the exploration of a material issue. But there's a lot of district court discretion that goes along with all of this, I would just say. Anyway, why don't you wrap up, and you can save a little rebuttal time. Thank you, Your Honor. We would suggest that the operative effect of the district court's ruling in prohibition on us deposing Momot and Sanchez was that we were bound, as a matter of law, to the recollections of Jones when there were two other participants with personal knowledge and participation. And then, Your Honors, on the issue of whether notwithstanding that evidentiary issue, we still should have overcome summary judgment. The district court relied on Paldo and Bridgeview to set a vicarious liability agency standard. In both of those cases, they went to trial and determination on the merits. Taking cases on the merits and turning them into a basis for a summary judgment ruling takes those cases farther by far than they ever were intended to go. Thank you. All right. Thank you. Mr. Steele. Good afternoon, Judge Rovner, Judge Wood, Judge Hamilton. It's a pleasure to be in front of all of you again. I think Judge Hamilton hit the nail on the head. This seems to be much ado about nothing. I watched all of the arguments today, and I heard Mr. Stein say in his first argument, this was a very interesting case. I hate to report I don't believe this one is very interesting at all. The issue specifically is whether or not, and I'll focus on the discovery one first because that seems to be the most important. We have very high boredom thresholds under these jobs. You should hear us talk. The case I had before you, Your Honor, when you were on the lower court was a FACTA case, so I'm well aware of those things. What was that? I believe. I thought down in Indiana, but perhaps not. Could be. I don't know. It seems as if counsel has forgotten that they took the depositions of two corporate witnesses for social wellness, both of whom testified very clearly that they did not discuss faxing ever, testified very clearly that they didn't receive authorization for the logo. Rather, they took it from an online website and downloaded it and used it without the knowledge of Darden. So I don't know exactly what they thought they were going to get. I don't think it's speculation to take it a step further. I think it's very clear from the record that there was absolutely no authorization. And so there is absolutely nothing that could have come out of that discovery, as Judge Shaw found, that would have moved the ball forward. So you're saying basically, I mean, clearly sometimes people don't initially get permission to depose certain witnesses, but they can show that the witness would fill in an important gap. And I guess, am I right that it's your position that simply the job description and the scope of authority for Momot and Sanchez was such that that possibility, the judge was entitled to decide without knowing that that possibility was there, that there was nothing they could add, basically. Sanchez is lower down in the totem pole. He's talking about, you know, press this button and order from Olive Garden or whatever he's saying, something like that. Yeah, I think it starts earlier, which I think is what Judge Hamilton mentioned, which is that, you know, we start with this arbitrary and actual substantial prejudice standard. The district court judge has absolute control over their docket, and you need an abuse of that discretion. So I think you start with that color. And I would agree with you, Your Honor, that, in fact, Ms. Momot and Mr. Sanchez had absolutely no authority. As was testified, Mr. Cohen said that it wasn't in the record. It is, in fact. Mr. Bott testified that even he didn't have the authority to authorize the use of the logo, and there's evidentiary documents in the record that show that there was a standard procedure by Darden, that you had to file a contract, you had to get authorization by a vice president, et cetera. So I take it there isn't really any evidence that Darden has ever told somebody, we're giving you permission to use the Olive Garden logo, go out and pull it off Google Images. Not that I'm aware of, Your Honor, in fact. But the concern that I have, I guess, is, I mean, apparent authority can be enough to impose liability here, I would think, on an employer. But for the sequencing issues, I would think it would be pretty tough for a district judge to say, you get these three depositions but not these two others of people with firsthand knowledge of the events. The difference between three and five is modest. And that would seem, you're not stuck with the testimony of the first two or three people to testify on the question. Right? I would generally agree with that. I think the district court, again, using his discretion, saw very clearly what the evidence had procured, saw very clearly what I would call the lack of diligence in bringing the other defendants into this case was, and made a decision after reviewing the documents and the arguments presented by counsel that they hadn't met their burden to show that these depositions were necessary. I mean, I would submit, as Your Honors may know from the record, we moved for sanctions in this case, because I do believe this case was frivolous. I think under the guiding case law of Bridgeview and Palo, it is clear that there was no authority for social wellness to have done what it did. It's clear also from the record that social wellness is not a one-time player. This is the third case I'm aware of that they've been sued for trademark infringement for doing exactly what they did. In fact, Darden, as you all may know, was sued social wellness for trademark infringement and was successful in getting a default judgment against them, which I would also submit as evidence that they had no authority to do what they did, since that's a ruling of the court below. So all of that evidence, you're right, in a general situation, A versus B, maybe the two more depositions should be granted. Well, in a time limited, you know, we're going to let you have three hours or whatever, two hours. So could you address the question about whether the plaintiffs could have talked to Momot on their own? They could have. I mean, you didn't have an attorney-client relationship with her? I don't know if I would have asserted that, but they never asked me. She was a departed employee. Under my understanding of Seventh Circuit law, it's probably questionable. Maybe you should say former employee. Departed sounds too permanent. Sorry, yes. As far as I know, she's still with us. Former employee. They could have very well reached out to her. I don't believe under the standard. I'm not sure she would have fallen in Mr. Cohen mentioned officer liability under TCPA. I don't think she falls within that. I think she's probably about seven levels below what officer liability would arise in this case. So short answer, yes, Your Honor, I believe they could have done it. What I would have done below had they asked me is a question I can't answer because I just hadn't put much thought into it. Yeah, absolutely they could have. I will close with that I think, and I mentioned it briefly, but I believe that the Paldo decisions and the Bridgeview decisions have not been expanded somehow beyond what was intended. Obviously, Judge Rovner and Judge Wood sat on both in the Paldo and one in the Bridgeview. We're all three familiar with them. I can assure you. I'm sure. Unfortunately, too familiar, I'm sure, with TCPA cases. Those decisions are very clear that the 2006 amendments in Paldo, that under both the on behalf of or advertising there is a requirement that there is an agency analysis that must be undertaken. That isn't limited to at trial, and that standard was applied here, and clearly Judge Shaw found that there was no authority at all to act on behalf of Darden. So unless there are other questions, I would rest. All right. Thank you very much. Thank you for your time. I see none. Anything further, Mr. Cohen? Very briefly, Your Honor. The doctrine of corporate officer liability, the use of the term corporate officer, is somewhat of a misnomer. It's the concept that people within a corporation at whatever level should not be held liable for the acts of the corporation unless they actually directly participated or personally authorized the actions. It goes all the way down to a truck driver. When you sue the company for what the truck driver did, and you can sue the truck driver too, you can't sue the president just because he's the president unless he personally participated or personally authorized the actions. So Momot Sanchez, if they authorized Jones and Kang and Social Wellness, they could have been held personally liable. But what reason is there other than just sort of speculation on your part that they did that? It doesn't seem to fit with the corporate plan for logo authorization. I don't see anything else corroborative of the notion that they might have done that. You could always guess, you know, maybe somebody did this, but wasn't the district judge within his rights to say it's just too speculative? Judge, the only thing I would say is that in my vast years of TCPA class action experience, a large corporation deviating from its traditional internal norms and protocols to foist upon itself huge TCPA liability for what somebody did in the company and shouldn't have done is commonplace. It has been the touchstone. And if we weren't entitled to depose the people who were involved and who had personal knowledge, we would never in fact be able to prove they deviated from their protocols. Okay. Thank you, Judge. Thank you very much. Thanks to both counsel. We'll take the case under advisement.